IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MBNA AMERICA BANK, N.A.,         )
                                 )
Plaintiff,                       )
                                 )
vs.                              )   NO. 2:05-CV-216
                                 )
CIOE & WAGENBLAST, P.C.,         )
et al.,                          )
                                 )
Defendants.                      )

**OPINION & ORDER**

This matter is before the Court on the: (1) Motion for Judgment on the Pleadings, filed by Defendants, Cioe & Wagonblast, P.C., Joseph B. Cioe, Esq., and Scott W. Wagenblast, Esq., on August 5, 2005; and (2) Motion to Strike MBNA's Affidavit and Supporting Materials, also filed by Defendants, on September 6, 2005. For the reasons set forth below, the Motion for Judgment on the Pleadings is **DENIED**. The Motion to Strike is **GRANTED**.

BACKGROUND

On May 25, 2005, Plaintiff, MBNA America Bank, N.A. ("Plaintiff" or "MBNA"), filed a Complaint alleging Defendants, Cioe & Wagonblast, P.C., Joseph B. Cioe, Esq., and Scott W. Wagenblast, Esq., have been conducting sham arbitrations with MBNA's cardholders. Specifically, Plaintiff maintains that several MBNA credit card holders have failed

to pay legitimate debts owing under their credit card accounts and, in an attempt to avoid paying the amounts due, the cardholders acted in concert with Defendants to procure sham "Arbitration Awards," which purportedly cancel the credit card debt and award damages, costs and fees against MBNA in favor of the cardholders.  MBNA sets forth that it has never agreed to arbitrate any of its cardholders' disputes with Defendants and has never participated in any such arbitrations. Rather, the terms of MBNA's agreements with its cardholders include mandatory arbitration provisions, which provide that all claims and/or disputes are subject to binding arbitration to be conducted by the National Arbitration Forum.

Plaintiff claims Defendants intentionally interfered with contractual relations between MBNA and its cardholders by soliciting cardholders for these purported arbitrations, and attempting to conduct unauthorized arbitration proceedings to which MBNA has never consented.  MBNA seeks both monetary and equitable relief.  In their Answer, Defendants asserted the defense of arbitral immunity as an affirmative defense.

Defendants have filed a motion for judgment on the pleadings, claiming that MBNA's claims are barred by the doctrine of arbitral immunity.  In its response to Defendants' Motion for Judgment on the Pleadings, MBNA filed an affidavit with various attached documents. MBNA's reliance upon materials outside the pleadings prompted Defendants to file a motion to strike.  These motions are fully

briefed and will be addressed below in turn.

DISCUSSION

Motion to Strike

As explained in more detail, *infra*, a court may rule on a motion for judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone. The pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). While the Court can consider matters outside the pleadings, such a practice converts the motion for judgment on the pleadings into a motion for summary judgment. *Id.* At 453 n.5.

Absent the parties' consent, this Court is generally not inclined to convert a motion for judgment on the pleadings into one for summary judgment. This is especially true here as discovery has been stayed pending the outcome of the motion for judgment on the pleadings. Consequently, as this Court will not consider matters outside the pleadings, Defendants' Motion to Strike is **GRANTED.**

Judgment on the Pleadings

A party is permitted under Federal Rule of Civil Procedure 12(c) to move for judgment on the pleadings after the parties have the complaint and the answer. Fed.R.Civ.P.12(c); *Northern Indiana Gun & Outdoor Shows*, 163 F.3d at 452. A motion for judgment on the

pleadings "under Rule 12(c) is reviewed under the same standard as a motion to dismiss under 12(b); the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). The court, in ruling on a motion for judgment on the pleadings, must "accept as true all well-pleaded allegations." *Forseth v. Village of Sussex*, 199 F.3d 363,364 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *Id*. at 452-53.

Defendants claim that they are entitled to arbitral immunity because all of their actions which are at issue in the Complaint were taken as a result of Defendant Cioe's role as an arbitrator. While the doctrine of arbitral immunity is well-established in this Circuit, *International Medical Group, Inc. v. American Arbitration Association, Inc.*, 312 F.3d 833 (7th Cir. 2002); *Caudle v. American Arbitration Association*, 230 F.3d 920 (7th Cir. 2000); *Tamari v. Conrad,* 552 F.2d 778 (7th Cir. 1977), the Court cannot posit, at this juncture, that Defendants are entitled to arbitral immunity as a matter of law.

Arbitral immunity is rooted in the doctrine of judicial immunity-because an arbitrator's role is considered the "functional equivalent" of a judge's role, courts have extended quasi-judicial immunity to

-4-

individual arbitrators. See *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382 (8th Cir. 1996)(collecting cases); *Tamari*, 552 F.2d at 780-81 (accepting similar holdings from the Third Circuit).  The policies underlying arbitral immunity thus parallel those underlying judicial immunity.  That is, to protect decision makers from undue influence and to protect the integrity of the decision-making process.  *Id. ("individuals* . . . cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between litigants and saddled with the burdens of defending a lawsuit").

   The Seventh Circuit has extended arbitral immunity to cases where the authority of an arbitrator to resolve a dispute is challenged. *Tamari,* 552 F.2d at 780.  In *Tamari*, the plaintiffs brought suit against a selected panel of arbitrators.  The plaintiffs contended that the selection and composition of the panel of arbitrators violated the terms of the parties' agreement to arbitrate and, therefore, the arbitrators did not have the right to arbitrate the dispute between the parties.  The plaintiffs argued that the arbitrators should not be entitled to immunity from suit if they have no right to arbitrate the dispute in the first place.  The Seventh Circuit disagreed as it analogized plaintiffs' suit against the arbitrators as an "attempt by a dissatisfied litigant to sue the members of a jury, seeking to obtain a declaration that the jury's verdict was void on the ground that the selection of the jury was

improper. Such a suit would not be permitted to go forward because it would place an unfair burden on the individual jurors and would discourage other citizens from becoming jurors." *Id.* at 781. As such, the Seventh Circuit held that the selected arbitrators were immune from suit.

Based upon the above recitation, it is clear that arbitral immunity attaches to all acts taken within the scope of the arbitral process. See, e.g., *Olson*, 85 F.3d 383. Nevertheless, arbitral immunity is not without its limits. A departure from this immunity arises when an arbitrator arbitrates a dispute in the clear absence of jurisdiction. *International Medical Group*, 312 F.3d at 843(citing *New England Cleaning Services, Inc. v. American Arbitration Association*, 199 F.3d 542 (1st Cir. 1999)). That is, when a demand for arbitration is so deficient on its face as to signal a "clear absence" of jurisdiction, an arbitrator should know that he does not have authority to arbitrate a dispute and, as such, will not be immune for his actions to the contrary. *New England Cleaning*, 199 F.3d at 546.

The Complaint alleges that the Defendants have engaged in sham arbitrations as part of a scheme to encourage MBNA cardholders to attempt to avoid their credit card debts and improperly interfere with MBNA's contractual relations with its cardholders. (Cmplt. ¶ 2) The Complaint further alleges that the Defendants knew that the contractual relationship between MBNA and its cardholders did not

authorize Defendants to conduct any arbitration involving disputes between MBNA and its cardholders.  (Cmplt. ¶ 15). Simply, the Complaint sets forth that Defendants were not authorized arbitrators but, rather, imposters acting in concert with cardholders in an attempt to avoid paying amounts due to MBNA.  Because these facts allege Defendants acted in a clear absence of jurisdiction, this Court cannot say that Defendants are entitled to arbitral immunity as a matter of law.

Defendants make much of the fact that arbitral immunity has been extended to cases where the authority of an arbitrator to resolve a dispute is challenged; however, in those cases the arbitrators were acting as neutral entities- having no interest in the outcome of the underlying dispute between the parties. *International Medical Group*, 312 F.3d at 842-43; *Tamari*, 552 F.2d at 780-81.  It is in that neutral role- of either judge or jury- that an arbitrator receives immunity. The allegations of Plaintiff's Complaint are wide of this line of reasoning as it sets forth that Defendants were not playing a neutral role.  Indeed, to extend immunity to a person who acts in concert with one party to conduct "sham arbitrations" in order to harm the other party would display a fundamental lack of understanding as to the established public policy rationale behind granting arbitral immunity.

As the Complaint alleges that Defendants knowingly conducted sham arbitrations in concert with MBNA's cardholders to interfere with MBNA's contractual relations with its cardholders, the cited cases by

Defendant, including *Tamari*, are inapposite. On that basis, the Motion for Judgment on the Pleadings is **DENIED**.

CONCLUSION

For the reasons set forth below, the Motion for Judgment on the Pleadings is **DENIED**. The Motion to Strike is **GRANTED**.

**DATED:   October 20, 2005**          /s/**RUDY LOZANO, Judge**
                                       **United States District Court**